UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL ROGER TURNER,

    Petitioner,                                       Case Number 10-14671
                                                              HONORABLE JOHN CORBETT O'MEARA
v.                                                      UNITED STATES DISTRICT JUDGE

GREG McQUIGGIN,

    Respondent,
_____/

**<u>OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS</u>**

Daniel Roger Turner, ("Petitioner"), presently confined at the Muskegon Correctional Facility in Muskegon, Michigan, has filed a *pro se* application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted by an Oakland County jury of two counts of first degree criminal sexual conduct (person under 13) (MCL 750.520b(1)(a)), and one count of first degree criminal sexual conduct (same household) (MCL 750.520b(1)(b)), for which he is serving three concurrent sentences of 30-60 years as a second habitual offender (MCL 769.10). For the reasons stated below, the petition for writ of habeas corpus is DENIED.

**I. BACKGROUND**

Petitioner was convicted of the above offenses following a jury trial in the Oakland County Circuit Court.

Tia Waslawski testified that Petitioner had dated her mother, Mary Crain, for a couple of years and lived with her, her mother, her sister, and her brother in Novi, Michigan. Tia was twelve and thirteen years old when Petitioner lived with her family. (Tr. 3/18/08, pp. 146-149,

1

223; Tr. 3/20/08, p. 5).

One evening in February 2005, Tia's mother took her sister to the hospital, leaving Tia at home with Petitioner. (Tr. 3/18/08, p. 152; Tr. 3/20/08, pp. 7-8). While Tia was lying on the couch in the living room watching TV, Petitioner came over to Tia and began touching her breasts underneath her clothing. Petitioner also touched Tia's private parts with his fingers and then moved his fingers on the inside of her body. Petitioner asked Tia if what he was doing to her was ok; she replied "yes" because she was scared. (Tr. 3/18/08, pp. 153-156). Petitioner warned Tia that "he would beat me and my mom's brains out if I told anybody." (*Id.*, p. 166).

Tia testified that a few days later, Petitioner "stuck his private part" in her "back side" and touched her mouth with his penis. (Tr. 3/18/08, pp. 156-158). Tia testified that after that incident, Petitioner sexually assaulted her several times in her room, her mother's bedroom, and the laundry room. Petitioner usually touched her mouth with his penis, and also inserted his penis in her "back side." Petitioner on other occasions placed his penis in Tia's mouth. (*Id.*, pp. 159-61). Tia also testified that one time Petitioner placed his penis in her "front part." (*Id.*, pp. 166-167).

On one occasion, when Petitioner was anally penetrating the victim, her sister Justice walked in, but the lights were off. Petitioner began talking to cover up what he had been doing and he locked the door after Justice left the room. (Tr. 3/18/08, pp. 176-177). Justice confirmed that she once had walked into her mother's bedroom and observed Tia and Petitioner on the bed, but she could not tell what was going on because it was dark inside of the room. (*Id.*, pp. 228-230).

On March 9, 2006, Tia told her mother about the sexual assaults, at which point her

mother took her to the hospital. (Tr. 3/18/08, pp. 163-164, 166; Tr. 3/20/08, pp. 8-9). Tia informed the doctor at the hospital that she had been pulled off her bike and raped in the woods by a man. Tia testified that this statement was only partially true because she knew it was Petitioner who raped her in the woods. Tia did not tell the doctor who had sexually assaulted her because she was afraid that people would not believe her. (Tr. 3/18/08, pp. 171). Tia admitted that she had a reputation for lying about certain things, a fact that was confirmed by her mother. (Tr. 3/18/08, p. 186; Tr. 3/20/08, p. 22). After Tia disclosed the sexual assaults, her mother wrote Petitioner a letter and he then left for Kentucky. (Tr. 3/20/08, pp. 14-15). Tia later learned from her mother that Petitioner had warts in his private area. (Tr. 3/18/08, p. 179; Tr. 3/20/08, p. 17).

Dr. Matthew Compton treated Tia on March 9, 2006 at the Huron Valley Hospital. (Tr. 3/20/08, p. 55). Tia informed Dr. Compton that she had been taken into the woods and her assailant had "put his thing up her butt hole" and also in her mouth. (*Id*., p. 61). Dr. Compton also testified that not every individual who comes into contact with genital warts will get genital warts. (*Id*., p. 66).

Dr. Mary Smyth was the medical director of the Child Advocacy and Protection Team at Beaumont Hospital. Dr. Smyth testified that she had examined Tia on April 20, 2006. (Tr. 3/20/08, pp. 83, 85-86). Tia told Dr. Smyth that she was hurting in her genital area and had noticed some bumps. (Id., p. 87). Dr. Smyth testified that it appeared from her examination of Tia that there had been some rubbing to the surface of the victim's labia. (Id., p. 89). During her examination of the victim, Dr. Smyth noticed the presence of a hymen, but testified that the physical condition of the victim's hymen did not exclude penetration by an offender. Dr. Smyth

3

also testified that she would only rarely observe anal injury during a sexual assault exam since the anus is fairly resilient and would heal quickly. (*Id*., pp. 91-93).

Amy Allen, a social worker with Care House, testified as an expert in forensic interviewing and the characteristics of sexually abused children. (Tr. 3/20/08, pp. 174-177, 180). Allen interviewed Tia about the allegations in this case. (*Id*., p. 182). Ms. Allen testified that sexually abused children often do not reveal the sexual assaults because they are afraid of not being believed or they feel responsible for the abuse. Often, when a parent gives an abused child an opening, such as when the parent indicates that they themselves might not have a good relationship with the perpetrator, which is what happened here, the children may feel they can disclose the sexual assault allegations. If the abuser threatened the child, the child may also believe that the abuser will carry through on the threat if the child reveals the sexually abusive behavior. Allen further indicated that sexually abused children often have conflicting emotions, particularly if their assailant was also providing for the family or the child's other parent loved the abuser. (*Id*., pp. 193-196).

Petitioner was ultimately arrested in Kentucky after attempting to avoid law enforcement. He was later extradited back to Michigan. (Tr. 3/20/08, pp. 117, 120-121, 157).

Following his conviction, Petitioner's appellate counsel filed a motion to remand to allow him to file a motion for resentencing. That motion was granted by the Michigan Court of Appeals (See Order dated March 13, 2009). Petitioner filed two additional motions to remand, which were denied. (See Order dated June 12, 2009).

Petitioner subsequently filed a claim of appeal in the Michigan Court of Appeals, through the State Appellate Defender's Office, raising the following claims which are now the basis of

his petition for habeas relief:

>I. The trial court reversibly erred in admitting evidence of sexual acts between the complainant's mother and Petitioner in violation of MCL 768.27b.
>
>II. MCL 768.27b conflicts with MRE 404(b) and violates the Michigan Supreme Court's separate constitutional power to establish, modify, amend, and simplify the practice and procedure in all courts in the State of Michigan.
>
>III. The trial court erred when it improperly scored Offense Variables 7, 8, and 10, and Petitioner's counsel was ineffective for failing to object to the improper scoring. Further, Petitioner's sentence was based on inaccurate information.
>
>Petitioner also filed a Standard 4 Supplemental Brief in the Michigan Court of Appeals,

which raised the following additional claims:

>I. Petitioner was denied the effective assistance of counsel when his trial counsel failed to investigate a police report filed by the complainant against her mother.
>
>II. Petitioner was denied the effective assistance of counsel when his trial counsel failed to object to the testimony of the examining physician regarding the complainant's hymen because the testimony did not meet the requirements of the state or federal rules of evidence.
>
>The Court of Appeals affirmed Petitioner's conviction in an unpublished opinion.

(*People v. Turner*, Mich. Ct. App. No. 286823 (December 15, 2009)). Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court raising the same claims which were raised in the Court of Appeals. The Michigan Supreme Court denied the application, issuing a standard order. (*People v. Turner*, Mich. Sup. Ct. No. 140536 (June 23, 2010)). Petitioner now seeks a writ of habeas corpus on the five grounds that he raised in the Michigan appellate courts as part of his direct appeal.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act

of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per*

6

*curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979)(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection

of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.  Finally, in reviewing Petitioner's claims, this Court must remember that under the federal constitution, Petitioner was "entitled to a fair trial but not a perfect one." *Lutwak v. United States,* 344 U.S. 604, 619 (1953).

### III.  DISCUSSION

**A.  Claim # 1 Admission of Evidence in violation of MRE 404(b) and Claim #2 MCL 768.27b conflicts with MRE 404(b).**

Petitioner argues that the issues presented in Habeas Claim I (Petitioner's right to due process of law was violated when the trial court admitted evidence of sexual acts between Petitioner and the victim's mother, in violation of MRE 404(b)), and Habeas Claim II (MCL 768.27b conflicts with MRE 404(b) and violates separation of powers, thereby violating Petitioner's right to due process of law) are violations of Michigan statutory law, the Michigan Rules of Evidence, and the Michigan Constitution.

Respondent argues that Petitioner's two claims are unexhausted because they were never presented to the Michigan courts as federal constitutional claims.

As a general rule, a state prisoner seeking federal habeas relief must first exhaust his available state court remedies before raising a claim in federal court. 28 U.S.C. § 2254(b) and (c); *Picard v. Connor*, 404 U. S. 270, 275-278 (1971); *Hannah v. Conley*, 49 F. 3d 1193, 1195 (6th Cir. 1995).  The exhaustion requirement for habeas petitions is satisfied if a prisoner completes one round of the state's established appellate review process, including a petition for discretionary review with the state supreme court. *O'Sullivan v. Boerckel,* 526 U.S. 838, 839-40, 845 (1999).  This means that a prisoner confined pursuant to a Michigan conviction must

raise each habeas issue in both the Michigan Court of Appeals and in the Michigan Supreme Court before seeking federal habeas corpus relief. *Mohn v. Bock,* 208 F. Supp. 2d 796, 800 (E.D. Mich. 2002). A habeas petitioner has the burden of proving that he has exhausted his state court remedies. *Sitto v. Bock,* 207 F. Supp. 2d 668, 675 (E.D. Mich. 2002). The Antiterrorism and Effective Death Penalty Act (AEDPA) preserves the traditional exhaustion requirement, which mandates dismissal of a habeas petition containing claims that a petitioner has a right to raise in the state courts but has failed to do so. *Welch v. Burke*, 49 F. Supp. 2d 992, 998 (E.D. Mich. 1999). As a general rule, a federal district court should dismiss a habeas petition that contains unexhausted claims. *See Foster v. Withrow,* 159 F. Supp. 2d 629, 638 (E.D. Mich. 2001).

Assuming that Petitioner's claims have not been properly exhausted with the state courts, an unexhausted claim may nonetheless be rejected if it lacks merit. *See Burton v. Bock,* 239 F. Supp. 2d 686, 691 (E.D. Mich. 2002)(citing to 28 U.S.C. § 2254(b)(2); *Cain v. Redman*, 947 F. 2d 817, 820 (6th Cir. 1991). This Court finds that in the interest of judicial economy, and to avoid any further burden on the state courts if Petitioner were to return there to attempt to exhaust these claims in a post-conviction motion, this Court will address Petitioner's first two claims on the merits, rather than dismiss the petition on exhaustion grounds.

Petitioner claims that he was denied due process when the court admitted evidence of sexual acts between Petitioner and the victim's mother and that admission of this testimony under MCL 768.27b conflicts with MRE 404(b) and violates the separation of powers as well as his rights to due process.

Petitioner initially contends that the admission of evidence of sexual acts between

9

Petitioner and the victim's mother pursuant to MCL 768.27b was more prejudicial than probative and was admitted solely to establish Petitioner's propensity to commit the charged offense, in violation of M.R.E. 404(b). The trial court heard argument prior to Petitioner's first trial, finding the evidence was not more prejudicial than probative and ruled that it was admissible at trial. The first trial resulted in a hung jury. The same argument was again brought and the evidence was ruled admissible by the trial court judge prior to Petitioner's second trial.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *See Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000); *See also Gross v. Warden, Lebanon Correctional Inst.,* 426 Fed. Appx. 349, 362, n. 5 (6th Cir. 2011).

Petitioner's claim that the state court violated M.R.E. 404(b) or any other provision of state law by admitting evidence of his prior sex acts with the victim's mother is non-cognizable on habeas review. *See Bey v. Bagley,* 500 F 3d 514, 519 (6th Cir. 2007); *Estelle,* 502 U.S. at 72 (Supreme Court's habeas powers did not permit Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law); *Dowling v. U.S.*, 493 U.S. 342, 352-53 (1990)(admission at defendant's bank robbery trial of "similar acts" evidence that he had subsequently been involved in a house burglary for which he had been acquitted did not violate

due process). The admission of this "prior bad acts" or "other acts" evidence against Petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell,* 329 F. 3d 496, 512 (6th Cir. 2003); See also *Adams v. Smith,* 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003). Given the lack of holdings by the Supreme Court on the issue of whether a state court violates a habeas petitioner's due process rights by the admission of evidence to establish the petitioner's propensity to commit criminal acts, the Michigan Court of Appeals' rejection of Petitioner's first and second claims was not an unreasonable application of clearly established federal law. *See Wright v. Van Patten,* 552 U.S. 120, 126 (2008); *Carey v. Musladin,* 549 U.S. 70, 77 ( 2006).

To the extent that Petitioner contends that evidence of the prior bad acts should have been excluded under M.R.E. 403 for being more prejudicial than probative, he would not be entitled to habeas relief. Appraisals of the probative and prejudicial value of evidence are entrusted to the sound discretion of a state trial court judge, and a federal court considering a habeas petition must not disturb that appraisal absent an error of constitutional dimensions. *See Dell v. Straub*, 194 F. Supp. 2d 629, 645 (E.D. Mich. 2002).

In his second claim, petitioner contends that the Michigan State Legislature usurped its authority by enacting MCL 768.27a, which conflicts with M.R.E. 404(b)'s prohibition on the admission of propensity evidence. Petitioner contends that because the Michigan Constitution gives the exclusive rulemaking authority on matters of court procedure and practice to the Michigan Supreme Court, the Michigan Legislature went beyond the scope of its authority by

11

enacting MCL 768.27a.

Petitioner's allegation that the Michigan Legislature essentially violated the separation of powers between branches of state government is not cognizable on habeas review because it raises an issue of state law. *See Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000). "[A] federal court may not grant habeas relief based on 'a perceived error of state law.'" *Id.* (quoting *Pulley v. Harris*, 465 U.S. 37, 41 (1984)). Furthermore, state officials are not required to follow their own procedural statutes and rules as a matter of federal due process. *See Sweeton v. Brown*, 27 F. 3d 1162, 1165 (6th Cir. 1994)(*en banc*); *See also Coleman v. Martin,* 363 F. Supp. 2d 894, 903 (E.D. Mich. 2005). Petitioner is not entitled to habeas relief on his second claim.

### B. Claim # 3. The sentencing guidelines claim.

As part of his third claim, Petitioner alleges that the trial court improperly scored several offense variables under the Michigan Sentencing Guidelines.

In general, sentencing issues are noncognizable and not subject to review by this Court. It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. at 67-68. A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law are usually not questioned by a federal habeas court. *See e.g. Stephenson v. Renico,* 280 F. Supp. 2d 661, 666 (E.D. Mich. 2003).

Petitioner's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is a state law claim. *See Tironi v. Birkett*, 252 Fed. Appx. 724,

725 (6th Cir. 2007); *Howard v. White,* 76 Fed. Appx. 52, 53 (6th Cir. 2003); *See also Haskell v. Berghuis,* 695 F. Supp. 2d 574, 598 (E.D. Mich. 2010)*;Coy v. Renico,* 414 F. Supp. 2d 744, 780 (E.D. Mich. 2006). "Petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." *See Mitchell v. Vasbinder,* 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009)(citing *Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 752 (E.D. Mich. 2005)). "[I]n short, petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt,* 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004). Any error by the trial court in calculating his guideline score or in departing above his sentencing guidelines range alone would not merit habeas relief. *Id.* Furthermore, the trial court corrected the errors at the resentencing, resulting in no change to Petitioner's guideline sentenced. Petitioner is not entitled to habeas relief on his third claim.

**C. Claims ## 3, 4, and 5. The ineffective assistance of counsel claims.**

In his third, fourth, and fifth claims, Petitioner alleges that he was denied the effective assistance of counsel.

In *Strickland v. Washington,* 466 U.S. at 668 (1984), the Supreme Court established a two-pronged test for determination whether a criminal defendant has received ineffective assistance of counsel. First, the convicted person must prove that counsel's performance was deficient, which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Second, the convicted person must show that counsel's deficient performance prejudiced him. Prejudice is established by a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.*

As part of his third claim, Petitioner alleges that he was denied the effective assistance of counsel at sentencing when counsel failed to object to misscored sentencing guideline variables. On remand, two of the alleged variables were re-scored, but this resulted in no change to the scoring of Petitioner's sentencing guideline range. As a result, even after the guidelines variables were re-scored, the trial judge did not change the sentence because the guidelines range was not affected by the correction of the guidelines variables.

Although the Supreme Court has never expressly extended *Strickland* to noncapital sentencing cases, the Sixth Circuit has applied it in that context with regards to reviewing federal convictions on direct appeal. *See United States v. Stevens*, 851 F. 2d 140, 145 (6th Cir. 1988). However, the AEDPA standard of review found in 28 U.S.C. § 2254 (d)(1) prohibits the use of lower court decisions in determining whether the state court decision is contrary to, or an unreasonable application of, clearly established federal law. *Miller v. Straub,* 299 F. 3d 570, 578-579 (6th Cir. 2002). The Ninth Circuit has noted, "[W]hen the Supreme Court established the test for ineffective assistance of counsel claims in *Strickland*, the [Supreme] Court expressly declined to 'consider the role of counsel in an ordinary sentencing, which ... may require a different approach to the definition of constitutionally effective assistance.'" *Cooper-Smith v. Palmateer*, 397 F. 3d 1236, 1244 & n. 39 (9th Cir. 2005)(quoting *Strickland,* 466 U.S. at 686). Because the Supreme Court has not decided what standard should apply to ineffective assistance of counsel claims in the noncapital sentencing context, there is no clearly established federal law regarding ineffective assistance of counsel claims in noncapital sentencing cases, so as to provide Petitioner with a basis for habeas relief on his claim that counsel was ineffective at sentencing. *Id., See also Davis v. Grigas,* 443 F. 3d 1155, 1158 (9th Cir. 2006).

Assuming that *Strickland* applies to noncapital sentencing, Petitioner "cannot show how he was prejudiced by the lack of these objections at sentencing since he got the review he wanted when the trial court held the subsequent hearing to reevaluate the scoring on all of these Offense Variable factors. Moreover, as discussed, supra, Petitioner's guidelines calculations by the trial court were correct, thereby again negating any prejudice." *People v. Turner*, Mich. Ct. App. No. 286823, 6-8. In light of the fact that Petitioner's sentencing guidelines range would not have changed even if the offense variables had been properly scored, Petitioner was not prejudiced by counsel's failure to object to the allegedly incorrect scoring of these offense variables under the sentencing guidelines. *See U.S. v. Pomales*, 268 Fed. Appx. 419, 423-24 (6th Cir. 2008).

Petitioner's fourth claim alleges 1) that trial counsel was ineffective by failing to utilize a police report that has never been produced, and 2) that counsel failed to produce an expert witness to rebut the testimony given by the physician who examined the complainant and/or to testify to complainant's psychological history.

Petitioner never provided a copy of the alleged police report to trial or appellate counsel, nor did he attach any such report to his pro per Standard 4 appeal brief, in which he raised this claim. On appeal, the Michigan Court of Appeals found "[t]he record contains no reference to any such police report, let alone its contents or how it would have been admissible at trial. This Court's review is limited to the record. Therefore, without anything on the record to support defendant's claim, defendant has failed to overcome the strong presumption that trial counsel was effective." *Turner,* Slip. Op. at 8.

Likewise, with respect to his related claim that counsel was ineffective for failing to call

an expert witness, Petitioner failed to attach any affidavits from any expert witness to his *pro per* Standard 4 Supplemental Brief or to the two motions to remand that he filed with the Michigan Court of Appeals, nor has he provided this Court with any affidavits from any expert concerning any proposed testimony and willingness to testify on the petitioner's behalf. By failing to present any evidence to the state courts in support of his claim that counsel was ineffective for failing to use a police report or for failing to call an expert witness, Petitioner is not entitled to an evidentiary hearing on his ineffective assistance of counsel claim with this Court. *See Cooey v. Coyle*, 289 F. 3d 882, 893 (6th Cir. 2002)(citing 28 U.S.C. § 2254(e)(2)(A)(ii)). Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998).

A habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. *See Keith v. Mitchell,* 455 F. 3d 662, 672 (6th Cir. 2006). Petitioner has offered, neither to the Michigan courts nor to this Court, any evidence that an expert witness would testify and what the content of this witness' testimony would have been. In the absence of such proof, Petitioner is unable to establish that he was prejudiced by counsel's failure to call an expert witness to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F. 3d 551*,* 557 (6th Cir. 2007).

In his fifth claim, Petitioner argues that counsel was ineffective when he declined to object to the testimony of Dr. Mary Smyth.

The admission of expert testimony in a state trial presents a question of state law which does not warrant federal habeas relief, unless the evidence violates due process or some other federal constitutional right. *See Keller v. Larkins,* 251 F. 3d 408, 419 (3rd Cir. 2001). Thus, a

federal district court cannot grant habeas relief on the admission of an expert witness' testimony in the absence of Supreme Court precedent which shows that the admission of that expert witness' testimony on a particular subject violates the federal constitution. *See Wilson v. Parker,* 515 F.3d 682, 705-06 (6th Cir. 2008). In the present case, the Michigan Court of Appeals concluded that Dr. Smyth was properly qualified as an expert witness on the issue of sexual abuse. *Turner,* Slip. Op. at 8. Because Petitioner has failed to show a reasonable probability that Dr. Smyth's expert testimony would have been excluded had an objection been made, Petitioner is not entitled to habeas relief on this claim. *See Pillette v. Berghuis*, 630 F. Supp. 2d 791, 802 (E.D. Mich. 2009); *aff'd in part and rev'd in part on other grds,* 408 Fed.Appx. 873 (6th Cir. 2010). Petitioner is not entitled to habeas relief on his fifth claim.

## IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to Petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. §

2254.

For the reasons stated in this opinion, the Court will deny Petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right with respect to any of the claims. The Court will also deny Petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

        s/John Corbett O'Meara
        United States District Judge

Date: July 3, 2013

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, July 3, 2013, using the ECF system and/or ordinary mail.

        s/William Barkholz
        Case Manager